Argued and submitted November 10, 2010, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings March 10, 2011

STATE OF OREGON,
*Petitioner on Review,*

*v.*

DAVID LINN HEISSER,
aka David Linn Dauphine,
*Respondent on Review.*

(CC 200522450; CA A131308; SC S058335)

249 P3d 113

Paul L. Smith, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were John R. Kroger, Attorney General and Mary H. Williams, Solicitor General.

Robin A. Jones, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for respondent on review. With her on the brief was Peter Gartlan, Chief Defender.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

_____

** Gillette, J., retired December 31, 2010, and did not participate in the decision of this case. Landau, J., did not participate in the consideration or decision of this case.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

The issue in this case is whether defendant and the state entered into a plea agreement, and if so, the terms of that agreement. The parties executed a written plea agreement providing that, at sentencing, the state was "free to seek [upward] departure sentences" within certain limits and, in turn, defendant was "free to seek presumptive sentences." At sentencing, defendant challenged the timeliness of the state's notice of intent to seek upward departure sentences. The trial court concluded that the plea agreement barred defendant from making that argument. The trial court also concluded that there had been no "meeting of the minds" between the parties, because they each subjectively held different understandings about the plea agreement's meaning. For that reason, the trial court withdrew defendant's previously entered guilty pleas and set the case for trial. Defendant was found guilty by a jury and was sentenced to a longer period of incarceration than would have been permitted under the plea agreement.

Defendant appealed, and the Court of Appeals reversed, concluding that the trial court lacked statutory authority to order the withdrawal of defendant's guilty pleas. *State v. Heisser*, 232 Or App 320, 222 P3d 719 (2009). We allowed the state's petition for review and now affirm the Court of Appeals, albeit on different grounds. On review, we conclude that the trial court applied an incorrect legal standard when it concluded that there was no "meeting of the minds" between the parties and ordered the withdrawal of defendant's guilty pleas. Instead, we hold that the parties entered into an effective plea agreement and that defendant's challenge regarding the timeliness of the state's notice to seek upward departure sentences did not violate the terms of the plea agreement.

The facts relevant to this court's review are undisputed. Defendant was indicted on one count of first-degree robbery, two counts of second-degree theft, and one count of unauthorized use of a vehicle. Before trial, a judge facilitated plea negotiations between defendant and the state.[1] Those

---

[1] A judge (other than the trial judge) "may participate in plea discussions." ORS 135.432(1)(b) (2005). "Participation by a judge in the plea discussion process shall be advisory, and shall in no way bind the parties." *Id.*

plea negotiations resulted in a written plea agreement, which was drafted by the prosecutor. The agreement pro-. vided that defendant would plead guilty to both counts of second-degree theft, to the single count of unauthorized use of a vehicle, and to the lesser-included offense of third-degree robbery. Regarding defendant's sentence, paragraph 8 of the plea agreement stated, in part:

> "The state is free to seek departure sentences that total no more tha[n] 50 months prison on the felony offenses. The defense is free to seek presumptive sentences and all concurrent sentences which would result in as little as 13 months prison."

With regard to defendant, the written plea agreement also stated that: "No one has made any threats to me or promises other than the plea agreement to get me to enter this plea. My plea of guilty is not based on any representations other than those outlined in this petition." Both the prosecutor and defendant signed the agreement.

On December 13, 2005, the parties appeared at a hearing before the judge who had facilitated the agreement. At that hearing, the prosecutor proffered the written plea agreement, which, he represented, "covers our negotiations in this matter." The prosecutor reiterated that "the details of these negotiations are contained in the plea petition." That judge accepted defendant's guilty pleas. The judge then stated that "I have been bound by these negotiations which will leave you * * * the option to argue for less than the State's going to be arguing for."

A hearing was held before the same judge on the morning of December 15. That hearing apparently was not recorded. It is uncontested, however, that a dispute arose between the state and defendant regarding proof of an aggravating circumstance that would justify upward departure sentences. Although defendant waived his right to have that issue decided by a jury, defendant refused to stipulate to the existence of the aggravating circumstance.

Later on December 15, the parties appeared before another judge for trial on the disputed aggravating factor and for sentencing. At that hearing, defense counsel asserted that

the state had failed to give defendant timely notice that it intended to rely on an "enhancement fact" to increase defendant's sentence, as required under ORS 136.765.[2] Specifically, defendant contended that the notice had not been given "after" the filing of the accusatory instrument, as provided by ORS 136.765, because the notice had been filed *before* the indictment had been issued.

That judge rejected defendant's argument. However, *sua sponte*, the judge invited the state to withdraw from the plea agreement. The judge stated:

> "I don't mean that to dismiss [defendant's] argument. It's actually a creative and a good argument, in—not in any moral sense, but in the sense that it's his job to do his job as a lawyer. And it would concern me enough that I would be, if the State wanted to say that with that argument out there hanging on appeal, that the circumstances of the negotiations weren't acceptable to it anymore, and it just wanted to start back to square one, I would be willing to say let him withdraw his [plea] and start back to square one, and let's have a trial and see what happens. But I'm prepared to rule denying [defendant's argument], and I'll give the State its choice as to what it wants to do at this point."

The state, in turn, asserted that defendant's argument regarding the timeliness of the notice was

> "clearly contrary to what was contemplated by the parties in this particular negotiation[ ], and unless defense counsel's willing to withdraw the plea [*sic*], I think that this matter should just be reset on the trial docket."

When defense counsel expressed some confusion, the judge asserted that the state was arguing as follows:

---

[2] ORS 136.765 provides, in part:

"In order to rely on an enhancement fact to increase the sentence that may be imposed in a criminal proceeding, the state shall notify the defendant of its intention to rely on the enhancement fact by:

"* * * * *

"(2) Within a reasonable time after filing the accusatory instrument, providing written notice to the defendant of the enhancement fact and the state's intention to rely on it."

"He [the prosecutor] says that * * * your legal objection to enhanced sentencing is not consistent with the negotiations. He's moving that there's not a meeting of minds in terms of the plea, and he's moving to ask that your plea of guilty be withdrawn and you be permitted to go to trial on the whole thing."

The prosecutor clarified that he so moved only "to the extent that they are going to continue with this objection that they're raising." Defendant refused to withdraw his argument about the lack of timely notice, contending that the terms of the agreement did not bar him from making that legal argument.

The judge stated that he was "treat[ing] this as a motion by the State pursuant to ORS 135.365,[3] and any other statutes that might be applicable to cause the defendant to withdraw his plea." The judge then ruled:

"Here, it appears to the State and to the Court that the defendant is proceeding in a manner which is not consistent either with the plea agreement or, quite frankly, the interests of justice. And accordingly, the plea of guilty previously entered will be withdrawn. A plea of not guilty is entered on behalf of the defendant. And again, I believe the Court has that right."

The next day defendant filed a motion for specific performance of the plea agreement. Defendant contended that the plea agreement was a plain and unambiguous contract and that he had fully performed his obligations under it.

Defendant's motion for specific performance was heard by a third judge. Before that judge, defendant asserted that the written plea agreement did not limit the arguments that he could make in challenging the state's attempt to obtain upward departure sentences; therefore, he could challenge the timeliness of the state's notice of intent to seek upward departure sentences. That judge rejected defendant's assertion:

---

[3] ORS 135.365 provides:

"The court may at any time before judgment, upon a plea of guilty or no contest, permit it to be withdrawn and a plea of not guilty substituted therefor."

"\* \* \* I don't think you can say that [a restriction on the scope of arguments] wasn't in the plea petition because it's there implicitly in paragraph eight when it says that [the prosecutor] can argue for a departure sentence. Well, then that—or they're free to seek a departure sentence.

"Then that to me, and to [the judge that facilitated the agreement], and I believe to [the prosecutor], meant that you weren't going to then say later: Oh, but we're not agreeing to that departure factor and we want a trial on that. Or you didn't \* \* \* give the notice the right way."

The court also stated: "[I]f the State is free to argue for 50 months then they're free to argue for it. That's what you bargained for."

The court also held that, because the prosecutor had a different subjective understanding than did defendant, there had been no "meeting of the minds" and therefore the parties had not entered into a plea agreement, stating:

"This isn't a game of gotcha. Okay? And that's what upset [the judge who facilitated the agreement] so much about this. It seems clear that the parties expected that the State would be free to ask for up to 50 months, and it seems clear to me that everybody in the room, except maybe your client, expected that you wouldn't be making a timeliness objection or any other kind of objection to that departure allegation notice that had been filed."

The judge later stated:

"I've talked to [the judge who facilitated the agreement] about this. I've reviewed what happened in court with him. I know what happened in court with me. And I don't think there's any question that there was not a meeting of the minds. And if—that's very clear to me. That's very clear beyond any question. There was no meeting of the minds."[4]

That judge concluded that, because there was no meeting of the minds, there was no plea agreement that could be specifically enforced. The judge offered defendant

_____

[4] Evidence of the facilitating judge's understanding of the agreement eventually became part of the record. Counsel met with that judge and the parties subsequently stipulated "that [the judge who facilitated the agreement] had the understanding that the prosecution was free to argue for departure sentences without legal impediment."

the opportunity to enter again into the plea agreement, with the understanding that the agreement would not allow defendant to object to the timeliness of the notice, provided that defendant agreed to again enter guilty pleas. Defendant refused the judge's offer and the case was set for trial.

Trial began the next day, January 5, 2006. At that time, defendant moved to reinstate his guilty pleas, contending that they had been improperly withdrawn. He also moved to dismiss the first-degree robbery charge, asserting that his guilty plea to third-degree robbery had placed defendant in double jeopardy as to that count. The trial court denied both motions. A jury found defendant guilty on all counts.

At sentencing, defendant moved to be sentenced in accordance with the plea agreement, with an upper sentence limit of 50 months. The trial court rejected that argument and sentenced defendant to 90 months in prison for first-degree robbery, with a consecutive sentence of 26 months in prison for unauthorized use of a vehicle. Defendant also received 12-month concurrent sentences on each of the two second-degree theft counts.

On appeal to the Court of Appeals, defendant asserted that the trial court had erred in withdrawing defendant's guilty pleas. Defendant contended that the plea agreement did not prohibit him from challenging the timeliness of the state's notice of intent to seek upward departure sentences and that the trial court lacked authority to withdraw his guilty pleas over his objection.

In a divided opinion, the Court of Appeals agreed with defendant that the trial court lacked authority to withdraw the guilty pleas without defendant's consent. *Heisser*, 232 Or App at 327. The majority concluded that ORS 135.365 does not allow the trial court to withdraw a defendant's guilty plea over the defendant's objection; it grants that authority only to the defendant. *Id.* at 327-28. The majority declined to reach the state's argument that the trial court had *inherent authority* to vacate a guilty plea that had been wrongly accepted, because the trial court "did not purport to exercise any inherent authority to vacate or reconsider a previous order." *Id.* at 329. The majority concluded that the case

should be remanded for the trial court to "reinstate defendant's guilty pleas and sentence defendant in accordance with [the] plea agreement." *Id.* at 332. A dissenting judge asserted that defendant was estopped to obtain relief on appeal, because he had declined the opportunity to reinstate the plea agreement by pleading guilty a second time. *Id.* at 333-39 (Edmonds, J., dissenting).

As noted, we allowed the state's petition for review. The state now concedes that the Court of Appeals correctly concluded that ORS 135.365 did not authorize the trial court to withdraw defendant's guilty plea over defendant's objection. Instead, the state argues in this court that there was no plea agreement because there was no meeting of the minds between the parties. The state also asserts that the trial court retained inherent authority to reconsider its decisions to approve the plea agreement and to accept defendant's guilty plea, just as it has inherent authority to reconsider other orders that it may make.

In response, defendant argues that, once a defendant pleads guilty as part of a plea agreement, the trial court cannot withdraw the guilty plea over the defendant's objection, even if the underlying plea agreement is invalid. Defendant also asserts that the plea agreement in this case unambiguously permitted him to challenge the timeliness of the state's notice of intent to seek upward departure sentences, and that the trial court incorrectly concluded that there had not been a "meeting of the minds" that prevented the formation of a plea agreement.

For reasons that we will explain, we do not need to decide whether a trial court has inherent authority to reconsider a prior decision to approve a plea agreement and accept a guilty plea as part of a plea agreement between the state and a criminal defendant. That is so because, even if the trial court had that authority, the trial court erred in this case in determining that the parties had not reached a plea agreement. We conclude that the trial court applied the wrong legal standard in determining whether there had been a "meeting of the minds" with respect to the plea agreement. Contrary to the trial court's understanding, the "meeting of the minds" of the parties requires an examination of the

objective representations of the parties, not their subjective or unspoken intents.

Applying the correct standard, we reject the trial court's conclusion that the plea agreement prohibited defendant from challenging the timeliness of the state's notice to seek upward departure sentences. We agree with defendant that the text of the plea agreement did not foreclose defendant from making that argument.

We begin by first examining the nature of plea agreements and their role in our judicial system. As both the United States Supreme Court and this court have explained, plea agreements are crucial to the proper functioning of the criminal justice system. *See Santobello v. New York*, 404 US 257, 260-61, 92 S Ct 95, 30 L Ed 2d 427 (1971) (characterizing plea agreements as both "essential" and "highly desirable"); *State v. McDonnell*, 310 Or 98, 103, 794 P2d 780 (1990) ("the legislature [has] concluded that plea negotiation is an essential component of an efficient and effective judicial system"). The ability to resolve criminal charges through plea agreements offers numerous benefits both to the criminal justice system as a whole and to criminal defendants in particular. Some benefits of the use of plea agreements include:

> "It eases the administrative burden of crowded court dockets; it preserves the meaningfulness of the trial process for those cases in which there is a real basis for disputes; it furnishes defendants a vehicle to mitigate the system's harshness, whether the harshness stems from callous infliction of excessive punishment or from the occasional inequities inherent in a system of law based upon general rules; and it affords the defense participation in and control over an unreviewable process that often gives the appearance of fiat and arbitrariness."

William F. McDonald, *Plea Bargaining: Critical Issues and Common Practices* 4 (1985) (internal quotation marks and citation omitted); *see also Santobello*, 404 US at 261 (articulating other benefits of plea agreements, including the "prompt and largely final disposition of most criminal cases" and "avoid[ing] much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial").

Since 1973, an Oregon prosecutor's authority to enter into plea negotiations and plea agreements has been "formally organize[d] and control[led]" by statute. *McDonnell*, 310 Or at 102-03. As part of a plea agreement, the prosecutor may give concessions to the defendant in exchange for a plea of guilty or no contest. ORS 135.405(3).[5] Those concessions can include, among others, agreeing to seek dismissal of other charges if a defendant pleads guilty to a charged offense; agreeing to seek dismissal of the charged offense if defendant pleads guilty to another reasonably related offense; and agreeing to make favorable recommendations on sentencing. *Id.*

If the parties reach a tentative plea agreement, the nature of the agreement must be disclosed to the trial judge no later than the time at which the defendant enters a plea of guilty. *See* ORS 135.390(2) (2005) (nature of the agreement must be disclosed to the trial judge at the time of tendering a plea); ORS 135.432(2) (2005) (explaining the circumstances under which the nature of the agreement may be disclosed to the trial judge prior to the tender of the plea).[6] The statutory scheme governing plea agreements contemplates different kinds of agreements. Under certain plea agreements the trial judge must give the plea agreement "due consideration," but is not bound by the agreement as to sentencing and may make an independent determination as to the appropriate sentence to be imposed. ORS 135.432(4). However, in other

---

[5] ORS 135.405 provides, in part:

"(3) The district attorney in reaching a plea agreement may agree to, but is not limited to, one or more of the following, as required by the circumstances of the individual case:

"(a) To make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or no contest to the offense charged;

"(b) To seek or not to oppose dismissal of the offense charged if the defendant enters a plea of guilty or no contest to another offense reasonably related to the defendant's conduct; or

"(c) To seek or not to oppose dismissal of other charges or to refrain from bringing potential charges if the defendant enters a plea of guilty or no contest to the offense charged."

[6] Both ORS 135.390 and ORS 135.432 were amended in 2009. Or Laws 2009, ch 356, § 1; Or Laws 2009, ch 178, § 33. Those amendments are not relevant to this decision, and all references are to the 2005 version of those statutes.

plea agreements approved by the trial court, the court is required to "impose sentence as provided in the agreed disposition recommendation" provided for in the plea agreement. ORS 135.390(4)(a).[7] In that kind of agreement, should the judge conclude that the sentencing concessions in a plea agreement are inappropriate, "the [judge] shall so advise the parties and allow the defendant an opportunity to withdraw the plea." ORS 135.390(4)(b); *see also* ORS 135.432(3) (to the same effect when the trial judge has been informed of the nature of the agreement prior to the plea being tendered and originally concurred in the outcome).

Although this court has not specifically addressed the proper method for interpreting a plea agreement, contract law generally (but not invariably) controls. As the United States Court of Appeals for the Fourth Circuit has stated:

> "In the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts."

*United States v. Harvey*, 791 F2d 294, 300 (4th Cir 1986) (citation omitted). *See McDonnell*, 310 Or at 114-16 (Fadeley, J., concurring in part and dissenting in part) (providing list of authorities applying contract law to plea agreements); Wayne R. LaFave, Jerold H. Israel, Nancy J. King, and Orin S. Kerr, 5 *Criminal Procedure* § 21.2(d), at 602-05 (3d ed 2007) (citing authorities).

Contract law is not necessarily the beginning or the end of the analysis, however. Criminal cases involve constitutional and statutory rights not ordinarily found in contracts between private parties, and those rights at times may override contractual principles. *See Harvey*, 791 F2d at 300-01 (so explaining). Thus, for example, a defendant's signature on a written plea agreement is not necessarily sufficient to

---

[7] Because of the 2009 amendment, *former* ORS 135.390(4) today is numbered ORS 135.390(5). *See* Or Laws 2009, ch 356, § 1 (adding a new subsection (3) to the statute).

create a binding agreement; the trial court still may not accept the guilty plea without first determining that the plea is "voluntarily and intelligently made." ORS 135.390(1) (court cannot accept a guilty plea without so determining); *see* ORS 135.390(4)(a) (in specific case of a plea agreement, "the court shall determine whether the plea is voluntarily made").[8]

In this case, the trial court analyzed the plea agreement in terms of contract law and decided that the agreement was not enforceable, because there was no "meeting of the minds." The term "meeting of the minds" is a "much-abused metaphor" that one commentator has suggested should be "abandoned" for purposes of clarity. E. Allan Farnsworth, I *Farnsworth on Contracts* § 3.6, 209, 209 n 2 (3d ed 2004); *see also* Lawrence M. Friedman, *A History of American Law* 245 (1973) (noting that the phrase " 'meeting of the minds' * * * must not be taken too literally"). The requirement of a "meeting of the minds" is in fact simply the requirement that there be mutual assent to the terms of the agreement. *See Bennett v. Farmers Ins. Co.*, 332 Or 138, 148, 26 P3d 785 (2001) (noting that mutual assent "historically was considered as the 'meeting of the minds' requirement"); Arthur Linton Corbin, 1 *Corbin on Contracts* § 4.13 (Joseph M. Perillo ed., rev ed 1993) (discussing relationship between mutual assent and "meeting of the minds").

As *Corbin on Contracts* notes, an enforceable contract does not necessarily require a "meeting of the minds":

"There is no actual 'meeting of the minds,' even though the terms of the bargain are reduced to writing and signed by both parties, if one of them did not in fact read or understand the written terms. Yet the signatory is generally bound."

*Id.* § 4.13 at 636 (footnote omitted).

---

[8] The requirement that a defendant's guilty plea be "voluntarily and intelligently made," could impose a subjective element, outside of contract law, regarding a defendant's internal understanding of the meaning and consequences of the plea agreement. However, that issue is not before us, and we express no opinion regarding it.

In *Kitzke v. Turnidge*, 209 Or 563, 307 P2d 522 (1957), this court discussed the misleading nature of the term "meeting of the minds." In that case, the trial court had refused to give a jury instruction regarding "meeting of the minds" that seemingly directed "that each of the two parties had to have in mind the same idea and intent before the jury could find that they effected a contract." *Id.* at 572-73. This court concluded that such an instruction would have erroneously stated the legal standard:

> "The law of contracts is not concerned with the parties' undisclosed intents and ideas. It gives heed only to their communications and overt acts."

*Id.* at 573. " 'Agreement consists of mutual expressions; it does not consist of harmonious intentions or states of mind.' " *Id.* (quoting *Corbin on Contracts* § 19). *See also Kabil Developments Corp. v. Mignot*, 279 Or 151, 154-57, 566 P2d 505 (1977) (discussing objective and subjective theories of contract, and concluding ultimately that the correct test for contract formation was "of manifested assent regardless of subjective intent").

"When considering a written contractual provision, the court's first inquiry is what the words of the contract say, not what the parties say about it." *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). Accordingly, courts should first "examine[ ] the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997).[9] The meaning of an unambiguous contractual provision is a question of law. *See Valenti v. Hopkins*, 324 Or 324, 331, 926 P2d 813 (1996) ("As a general rule, the construction of a contract is a question of law. Unambiguous contracts must be enforced according to their terms * * *."); *Eagle Industries*, 321 Or at 405 ("In the absence of an ambiguity, the court construes the words of a

---

[9] That method of interpretation has a statutory basis. *See* ORS 42.230 (courts interpreting written documents are "not to insert what has been omitted, or to omit what has been inserted"); ORS 41.740 (the parol evidence rule limits the circumstances under which courts may consider anything other than the terms of a written contract to determine its meaning).

contract as a matter of law."). The determination whether a contractual provision is ambiguous also is a question of law. *Valenti*, 324 Or at 331-32; *Eagle Industries*, 321 Or at 405.

In this case, we conclude that the trial court applied an incorrect legal standard when it determined that the parties' differing subjective understandings of the plea agreement meant that there was no "meeting of the minds." Both parties here signed an unambiguous written plea agreement.[10] We conclude that there was mutual assent to the terms of the agreement—that the parties did have a "meeting of the minds" as that term is correctly understood—and the trial court erred in concluding that there was no plea agreement.[11]

Having concluded that the parties did enter into an enforceable plea agreement, we now must determine the terms of the agreement. The trial court determined that the written plea agreement prohibited defendant from arguing

---

[10] Because we conclude that the plea agreement here was unambiguous, we need not address the consequences if the plea agreement had contained an ambiguous term.

[11] In rare cases, a party's unilateral mistake as to the meaning of the contract will justify rescission in equity. As this court has explained:

"We believe that in this State an offer and an acceptance are deemed to effect a meeting of the minds, even though the offeror made a material mistake in compiling his offer, provided the acceptor was not aware of the mistake and had no reason to suspect it. But if the offeree knew of the mistake, and if it was basic, or if the circumstances were such that he, as a reasonable man, should have inferred that a basic mistake was made, a meeting of the minds does not occur."

*Rushlight Co. v. City of Portland*, 189 Or 194, 244, 219 P2d 732 (1950). The mistake at issue must be one of fact. *See Gardiner v. Meiling*, 280 Or 665, 674-75, 572 P2d 1012 (1977) ("A mistake justifying rescission must be a misapprehension as to a fact which is material and basic to the agreement."). Furthermore, the mistake must be basic: It must be "fundamental in character," relating to a " '[f]undamental [a]ssumption' " or " 'the intrinsic nature of the bargain.' " *See Shop. Centers v. Stand. Growth Prop.*, 265 Or 405, 422-23, 509 P2d 1189 (1973) (quoting Williston, 13 *Contracts* § 1544, at 94 (3d ed)) (discussing doctrine of mutual mistake).

Here, the state would not be entitled to relief under that doctrine. The prosecutor was not mistaken as to any underlying facts. As we will explain, he was apparently mistaken as to the legal effect of the plea agreement. Additionally, the prosecutor's mistake was not basic. Even under the prosecutor's understanding of the agreement, he knew that the state was not guaranteed upward departure sentences and that defendant would be arguing for lesser sentences. Under those circumstances, defendant's ability to challenge the timeliness of the state's notice was neither "basic" nor "fundamental" to the agreement.

against the timeliness of the state's notice to seek upward departure sentences. We come to the opposite conclusion.

As noted, the plea agreement stated:

"The state is free to seek departure sentences that total no more tha[n] 50 months prison on the felony offenses. The defense is free to seek presumptive sentences and all concurrent sentences which would result in as little as 13 months prison."

The trial court reasoned that the state's right to seek upward departure sentences impliedly limited the arguments that defendant could make in response to the state's argument. However, the state's entitlement to seek upward departure sentences was no guarantee that the court would impose them. Nothing in the text of the agreement prohibited defendant from pointing out any mistakes the state might have made in laying the groundwork for upward departure sentences. Nor does anything in the agreement limit the legal or factual arguments that defendant could make in favor of presumptive sentences and against departure sentences. Defendant's agreement to permit the state to argue for a longer sentence did not waive his opportunity to make counterarguments supporting a shorter sentence.

We must give effect to all provisions of the plea agreement. Under those provisions, the state was free to seek upward departure sentences, *and defendant was free to oppose them*. Defendant argued that the state's failure to give timely notice legally prohibited the state from obtaining upward departure sentences. Nothing about that argument kept the state from seeking upward departure sentences, although it might have kept the state from obtaining them. The trial court was free to evaluate both parties' arguments based on the applicable law and to rule accordingly.

In this case, the only real issue was a simple question of contract interpretation: Did the plea agreement allow defendant to challenge the timeliness of the notice? We have concluded that the trial court erred in holding that the plea agreement barred defendant from making the lack-of-notice argument. We also have concluded that the trial court

applied an incorrect legal standard when it *sua sponte* concluded that, because the prosecutor had a different understanding of the agreement than did the defendant, there was no "meeting of the minds" and therefore the parties had not reached a plea agreement. As a result, the trial court erred in withdrawing defendant's guilty pleas. The order withdrawing defendant's guilty pleas and the subsequent judgment of conviction and sentence are reversed. We remand for the trial court to reinstate defendant's original guilty pleas and to conduct a sentencing hearing in accordance with the terms of the plea agreement.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.