Submitted October 28, 2015, reversed and remanded October 19, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD STEPHEN THOMAS,
*Defendant-Appellant.*

Deschutes County Circuit Court
13FE0896; A156261

386 P3d 218

Peter Gartlan, Chief Defender, and Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**DEVORE, J.**

In this criminal appeal, defendant challenges the imposition of restitution, because his plea agreement had not included it. Defendant argues that, by requesting restitution, the state breached the plea agreement, the trial court should have specifically enforced the agreement, and the trial court erred by imposing restitution of $6,460. We agree that the state breached the plea agreement and that the court erred by proceeding to sentence defendant without regard to the breach. Accordingly, we reverse and remand for further proceedings under a correct understanding of the law, as explained below. We reject, without discussion, defendant's second assignment of error, involving an argument about the lack of a jury finding on restitution. *See State v. McMillan (A112613)*, 199 Or App 398, 401-02, 111 P3d 1136 (2005) (restitution not a jury issue).

The relevant facts are undisputed and mostly procedural. On August 13, 2013, defendant agreed to plead no contest to one count of unauthorized use of a vehicle (UUV) involving a utility trailer. ORS 164.135(1). On the UUV charge, the plea agreement provided, in part:

> "I am pleading no contest of my own free will. No one has threatened or coerced me or forced me to plead guilty. The only commitments made to me are the ones made by the district attorney. They are: 12 mo[nths], Monitored Probation, 80 h[ou]rs CSW [community service work], drug package, no contact with victim, FFC [fines, fees, and costs] per court."

Consistently, the state summarized the agreement for the court:

> "[Defendant] is pleading guilty to unauthorized use of a motor vehicle as a misdemeanor. State's recommending 12 months' monitored probation; 80 hours' community service work; drug package; no contact with victim; fines, fees, and costs per the Court."

No one mentioned restitution. Just above defendant's signature, the plea petition recited:

> "I have read and understand the information on this side and the back side of this petition to enter a plea of

guilty [*sic*]. I am aware that I am waiving the rights listed on the back side of this paper."

Beneath defendant's signature, his attorney certified that he had "reviewed [the] plea petition with the defendant and believe[d] that [defendant] understands it." On the back side, the petition contained a "Statement of Rights," which, among other things, acknowledged:

> "I face the same punishment for the crimes for which I plead as if I had stood trial and been convicted. * * * *The court is not bound by the recommendations of the state* or my attorney."

(Emphasis added.) During the plea hearing, the court engaged defendant, asking,

> "THE COURT:   [Defendant,] did you review both of these plea petitions with your attorney?
>
> "THE DEFENDANT:   Yes, Your Honor.
>
> "THE COURT:   Did you go over all the information on the back of it, too, that says, 'Statement of Rights?'
>
> "THE DEFENDANT:   Yes, Your Honor."

Defendant submitted his plea of no contest based on the recommended terms, and the trial court accepted the plea.

Two days later, the trial court held a sentencing hearing. At the beginning of the hearing, the court inquired whether the trailer owner had been notified of the proceeding. The prosecution assured the court that the owner had been notified but that it did not appear that anyone wished to be present.

For background, the state summarized the circumstances of defendant's offense. The state recounted that two people stole a trailer from a church and towed it to defendant's property. Because defendant did not want the trailer on his property, he towed it to public land. When police asked about the trailer, defendant took the police to where he had left it, but it was no longer there. The trailer was never recovered.

The state told the court that, because the trailer was not recovered, there was a restitution request. That

statement, made two days after the plea had been entered, was the first mention of restitution in the record. Defense counsel objected that the plea agreement did not include restitution, imploring,

> "We're asking the Court to follow the recommendation. The plea agreement didn't—didn't ask for any restitution. We didn't receive that request until this morning. I received some faxed documents on it late yesterday, and then again was told about the actual request this morning."

In more ways than one, the court did not follow the recommendation in the plea agreement. The court imposed 10 days' jail time on the UUV charge and scheduled a hearing on restitution.

In late August, the state filed a certificate stating that it had complied with requirements to notify the trailer's owner of its victim rights. The state left unanswered the certificate's check-box statements whether the victim asked the prosecutor to enforce the victim's rights and whether the victim would do so independently. The state reported that the "victim had not yet responded."

At the restitution hearing in October 2013, the state was prepared to offer evidence that an insurance company had paid the trailer's owner $6,099 and that the owner had paid $361 (*i.e.*, a $100 deductible from insurance coverage and $261 in DMV fees for title and registration of a replacement trailer). Defendant conceded those figures. Defendant, however, contended that he was not responsible for the loss of the trailer and that he should not be obligated to pay restitution. He argued that he was not convicted of theft and that he was not the person who took or kept the trailer. Moreover, he argued, the plea agreement did not include a request for restitution, and the state's request was now "in violation of a plea bargain."

To allow more time, the hearing was continued until January 2014 for legal arguments. Defendant argued that the restitution request was "really unforeseen, unexpected, not contemplated as part of the agreement." Defendant urged:

"So essentially what we're asking the Court to do is enforce those rights through specific performance. * * * [T]he Court could potentially allow [withdrawal] of a plea as another remedy.

"It is appropriate for the Court to grant the relief requested by the defendant, particularly in a case like this where, for one, he's already sentenced.

"* * * * *

"So we're asking for specific performance, which is essentially the State not asking for the restitution in this case. The victim had a right to appear at sentencing. They were not present and did not make the request, so it's our position that the State should drop their request at this time and that the matter would be settled.

"The other option would be for the Court to essentially vacate the sentence and reset it for sentencing * * * and have the State uphold its end of the bargain at that time and support the plea agreement that it struck with [defendant]. So that's what we're asking for."

Defendant concluded that, given the state's breach, specific performance should follow.

In large part, the trial court acknowledged defendant's complaint about the unexpected request for restitution, made after a plea was already entered. The court allowed "that the State arguably did violate the plea by stating it would request restitution, because the plea, as stated, was what was in the petition itself, and it did not provide for any request for restitution." Although the state may have "had a duty to request restitution," the court recognized that such a duty did not mean that the state did *not* reach a plea agreement. That said, the court concluded that enforcement of the plea agreement would violate the statute regarding restitution and, potentially, the Oregon Constitution. Further, the court noted, defendant had not asked to withdraw his plea at sentencing. After considering the state's evidence and recommendation, the court imposed restitution totaling $6,460.

On appeal, defendant argues that the plea agreement is a contract whereby each party offered something in

exchange for the other's promise. According to defendant, the state agreed that it would recommend that the court sentence defendant according to the specific, agreed terms. In exchange, defendant agreed to enter a plea of no contest and to give up his right to a jury trial, among other rights. Defendant argues that his plea bargain should be specifically enforced because the parties entered into an "unambiguous agreement."

The state responds that, because the plea agreement is silent on the issue of restitution, the plea agreement "fails to demonstrate that the parties contemplated that the state was precluded from seeking restitution for the victims." In the state's view, the plea agreement only identifies the limited promises that the state had made, not that the parties "had agreed on every facet of defendant's sentence." The state stresses that, under ORS 137.106(1)(a), the district attorney is obligated to investigate and present evidence of the victim's economic damages, and the trial court is obligated to impose restitution if warranted by the evidence.[1] Further, the trial court may reduce the amount of restitution only with the victim's consent. ORS 137.106 (1)(b).[2] Finally, the state argues that because defendant did not ask to withdraw his plea but asked instead for a restitution hearing, defendant's conduct shows that "the parties had not agreed to no restitution."

---

[1] ORS 137.106(1)(a) provides, in part:

"When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or within 90 days after entry of the judgment, evidence of the nature and amount of the damages. * * * [I]f the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

[2] ORS 137.106(1)(b) provides:

"Notwithstanding paragraph (a) of this subsection, a court may order that the defendant pay the victim restitution in a specific amount that is less than the full amount of the victim's economic damages only if:

"(A) The victim * * * consents to the lesser amount, if the conviction is not for a person felony; or

"(B) The victim * * * consents in writing to the lesser amount, if the conviction is for a person felony."

"We review sentencing decisions, including restitution orders, for errors of law." *State v. Noble*, 231 Or App 185, 189, 217 P3d 1130 (2009). In this case, an error, if any, traces back to the terms and enforcement of the plea agreement. Therefore, our analysis begins with the importance of plea agreements. Relatively recently, Oregon's Supreme Court declared that "plea agreements are crucial to the proper functioning of the criminal justice system." *State v. Heisser*, 350 Or 12, 21, 249 P3d 113 (2011); *see State v. McDonnell*, 310 Or 98, 103, 794 P2d 780 (1990) ("[T]he legislature [has] concluded that plea negotiation is an essential component of an efficient and effective judicial system[.]"). It follows that it is important to protect the integrity of a plea agreement.

Generally, the state may compromise. District attorneys may "engage in plea discussions for the purpose of reaching a plea agreement" in cases where public interest "in the effective administration of criminal justice would thereby be served." ORS 135.405(1). In reaching a plea agreement, a prosecutor may give concessions to the defendant in exchange for a plea of guilty or no contest. "Those concessions can include, among others, agreeing to seek dismissal of other charges if a defendant pleads guilty to a charged offense * * * and agreeing to make favorable recommendations on sentencing." *Heisser*, 350 Or at 22.

To be sure, "[w]hen a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court * * * evidence of the nature and amount of damages." ORS 137.106 (1)(a). And, if the court thereafter finds that the victim suffered economic damages, the court shall enter a judgment requiring restitution. *Id.* Even so, when offering a plea agreement before conviction, some of the circumstances of the crime may be unclear in light of conflicting evidence. Or, a district attorney may lack information from a crime victim about a loss, despite reasonable notice and investigation. Whatever the results of investigation or presentation of evidence, nothing requires that the state *recommend* restitution in every circumstance.

Our question, therefore, reduces to interpretation of the plea agreement at hand. When interpreting that plea

agreement, "contract law generally (but not invariably) controls." *Heisser*, 350 Or at 23. On this point, the Oregon Supreme Court has quoted:

> "'In the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts.'"

*Id.* (quoting *U.S. v. Harvey*, 791 F2d 294, 300 (4th Cir 1986)).

In *Heisser*, the Supreme Court began consideration of a plea agreement by asking whether "there was mutual assent to the terms of the agreement." *Heisser*, 350 Or at 26. Next, the court determined the terms that comprise the agreement. *Id.* at 26-27. When terms are written, the court's analysis considers those terms, using typical contract analysis. *Id.* at 25-26 (citing, *inter alia, Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997)). Courts should examine "the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." *Id.* at 25 (internal quotation marks omitted). "The meaning of an [u]nambiguous contractual provision is a question of law" and "[u]nambiguous contracts must be enforced according to their terms." *Id.* (internal quotation marks omitted).[3]

Similarly in this case, we begin by determining whether an agreement was reached and then determine whether restitution was among its terms. Here, we recognize that the core text of defendant's plea agreement states the agreed recommended sentence. That recommendation is "12 mo[nths], Monitored Probation, 80 h[ou]rs CSW

---

[3] In *Heisser*, the Supreme Court stressed that the initial question is objective, not subjective. The trial court had erred when concluding that the parties had different subjective understandings and that, therefore, no "meeting of the minds" had occurred in reaching a plea agreement. 350 Or at 26. The trial court rejected the agreement and imposed a greater sentence. The Supreme Court concluded that a plea agreement had been reached and that no term barred the defendant from a procedural objection resisting a greater sentence. Judgment was reversed and remanded for enforcement of the plea agreement. 350 Or at 27-28.

[community service work], drug package, no contact with victim, FFC [fees, fines, costs] per court." Although the terms are cryptic, nothing indicates that the terms are incomplete. Sentencing is addressed; details are included. Nothing that is mentioned is left open to be discussed further, resolved later, or determined at sentencing. Nothing indicates that the parties have failed to assent to the material terms of their agreement. We conclude, therefore, that the parties reached a binding agreement, and that the agreement is one that must be enforced according to its terms. *See Heisser*, 350 Or at 27 ("We must give effect to all provisions of the plea agreement.").

We recognize that the terms employed here did not contemplate that the state would recommend restitution, and we find that omission to be significant. The agreement provided that defendant was to plead no contest. In exchange, "[t]he only commitments made to [him] [were] the ones made by the district attorney," and those commitments were the recommendations for a sentence with probation, community service, a "drug package," avoiding the victim, and the routine "fees, fines, and costs." The specificity of those recommendations necessarily meant that the district attorney would not recommend any additional, unspecified consequences, such as prison time or restitution.

Allowing the state to recommend restitution would introduce a new term that was not expressed anywhere in the printed or handwritten text of the plea agreement. To insert a new term of contract would be contrary to ordinary contract principles. We are reminded by ORS 42.230 that, "[i]n the construction of an instrument," the court "is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted." A court "may not read into a contract provisions that simply do not exist." *Thompson v. Bolliger Hampton & Tarlow*, 118 Or App 700, 710, 849 P2d 526, *rev den*, 317 Or 163 (1993); *see also Hynix Semiconductor Mfg. America v. EWEB*, 276 Or 228, 235, 367 P3d 927 (2016) (although a court may declare what is implicit in a contract, it may not create an entirely new obligation). Therefore, we conclude that allowing the state to recommend restitution is inconsistent with the

terms to which the parties assented in reaching the plea agreement.[4]

Given the agreement made, the trial court was nearly right when observing "that the State arguably did violate the plea by stating it would request restitution, because the plea, as stated, was what was in the petition itself, and it did not provide for any request for restitution." To be precise, the state's request for restitution was not just an "arguable" breach of the plea agreement; the state's request was a breach of the plea agreement.

Upon the state's breach of a plea agreement, two remedies become available. They are remedies that we have described in a post-conviction case:

"In contract cases the victim of a breach frequently has a choice of remedies; he can affirm the contract and seek damages, or disaffirm it and seek to be reinstated to the position he was in before it was consummated. *As applied to plea bargaining, 'affirming the contract' would, in effect, result in specific performance of the prosecutor's promise that induced the defendant to plead guilty, and 'disaffirming the contract' would enable the defendant to withdraw his guilty plea, or pleas, thereby restoring all parties to the [s]tatus quo ante.* The Supreme Court in [*Santobello v. New York*, 404 US 257, 262, 92 S Ct 495, 30 L Ed 2d 427 (1971)] recognized both of these possibilities, and implied that the form of relief to be granted would depend on the circumstances of each case."

*Stewart v. Cupp*, 12 Or App 167, 173, 507 P2d 503 (1973) (emphasis added) (internal citation omitted); *see also Heisser*, 350 Or at 27-28 (remanding for resentencing subject to the plea agreement).

In this case, the state's breach entitled defendant to the same potential remedies. That is, defendant may disaffirm the agreement by seeking to withdraw his plea or may affirm the agreement by seeking specific enforcement of the

---

[4] The situation is different where a plea agreement would allow restitution and the trial court later remedies a procedural failure to have included proper restitution at the time of initial sentencing. *See, e.g., State v. Wagoner*, 257 Or App 607, 610-11, 307 P3d 528 (2013); *State v. Thompson*, 257 Or App 336, 343-45, 306 P3d 731 (2013).

plea agreement in a sentencing at which the state refrains from recommending restitution. As it happened, the parties and the trial court operated under an impaired understanding of how to proceed in the case of a breach by the prosecutor. The trial court commented that withdrawal of the plea was something that the court could still have denied, even with the state's breach. Defendant meanwhile appears to have assumed that the trial court had to make certain findings before allowing him to withdraw the plea.[5] Given those misimpressions, the latter remedy was what defendant asked of the trial court. As noted before, defendant said, "So we're asking for specific performance, which is essentially the state not asking for the restitution in this case." Because the court did not recognize the potential options, the court erroneously proceeded to sentence defendant without regard to the state's breach. Accordingly, we reverse and remand for further proceedings under a correct understanding of the law.[6]

Reversed and remanded.

---

[5] That was a "misimpression" because the court's determination of breach of a plea agreement could provide the grounds, in itself, to satisfy the trial court to permit defendant to withdraw his plea. Withdrawal of a plea, in *other* circumstances, could depend, for example, upon the court's determination of other matters, such as a defendant's voluntariness or understanding of the plea agreement. *See State v. Taylor*, 62 Or App 220, 223-24, 660 P2d 690 (1983) (withdrawal of a guilty plea involving whether the defendant fully understood his rights, the nature of the charge against him and the consequences of his plea). Withdrawal of a plea in this circumstance would not.

[6] The parties have not addressed the role of the crime victim, when independently seeking restitution, or the trial court's authority to impose—or not to impose—restitution when the state has agreed not to recommend it. Such issues are not squarely presented here. A developed record is a prerequisite to address such issues. On this record, we do not.