Argued and submitted February 13, 2019; reversed and remanded for resentencing, otherwise affirmed July 1, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN PATRICK LYNCH,
*Defendant-Appellant.*

Multnomah County Circuit Court
16CR24443; A165070

469 P3d 800

Defendant stole a car and attempted to elude police. Ultimately, he crashed into and damaged a stairwell and guardrail owned by the City of Portland. This led to a number of charges against defendant, which he elected to resolve through a plea bargain. Under the plea agreement, the state agreed, among other things, to recommend restitution within 90 days. Within 90 days, the state sought, and the trial court awarded, restitution for the damaged car. Then, nearly two months after the expiration of the 90-day period, the state sought, and the court awarded, additional restitution to the city for damage to the stairwell and guardrail. On appeal, defendant contends that the court erred in awarding restitution to the city because he has a due process right to enforce the 90-day period specified in the plea agreement. The state counters that the 90-day limit is unenforceable because it violates the city's right under Article I, section 42, of the Oregon Constitution to receive prompt restitution from defendant for the damage he caused. *Held*: The trial court erred in awarding restitution to the city at the request of the state in contravention of the terms of the plea agreement. Defendants have a due process right to enforce against the state the material terms of their plea agreements, and the state violated a term of defendant's plea agreement by seeking restitution outside of the 90-day period. Enforcing the plea agreement against the state does not violate any right of the city under Article I, section 42, because the city does not have a right to have the state seek restitution on its behalf and may seek restitution on its own accord.

Reversed and remanded for resentencing; otherwise affirmed.

Henry Kantor, Senior Judge.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Reversed and remanded for resentencing; otherwise affirmed.

James, J., dissenting.

**LAGESEN, P. J.**

Defendant stole a car and attempted to elude police. Ultimately, he crashed into a stairwell and guardrail owned by the City of Portland, damaging them. That led to a number of charges against defendant, which he elected to resolve through a plea bargain. Under the plea agreement, the state agreed, among other things, to recommend that the parties "stipulate to liability for restitution (amount TBD w/in 90 days)." Within 90 days, the state sought, and the trial court awarded, $22,440.52 in restitution to the car's owner's insurer. Then, a few months after the expiration of the 90-day period, the state sought, and the court awarded, an additional $29,967.44 to the city for damage to the stairwell and guardrail. Defendant contends that the court's award of restitution to the city was in error, in view of the 90-day period specified in the plea agreement. We agree and reverse and remand.

As the issues have been framed for us by the parties, whether the trial court erred in awarding restitution to the city outside the 90-day period specified in defendant's plea agreement presents a question of law, making our review for legal error.

The relevant facts are in the main procedural and not disputed. Defendant stole a car that had a shotgun in the back seat. While driving around downtown Portland, defendant noticed a police car pull in behind him and, in his words, "freaked out and attempted to elude." He crashed the stolen car, damaging a stairwell and a guardrail, which were owned by the City of Portland.

For that conduct, a grand jury indicted defendant for seven crimes, including one count of felon in possession of a firearm, ORS 166.270, one count of unauthorized use of a vehicle, ORS 164.135, and one count of fleeing or attempting to elude, ORS 811.540. Pursuant to a plea agreement, defendant pleaded guilty to those three crimes. Under the terms of the parties' plea agreement, the state agreed to recommend, as part of the sentence on Count 4, that the parties "stipulate to liability for restitution (amount TBD w/in 90 days)." The trial court accepted the recommendations in the plea

agreement, the other four charges were dismissed under the terms of the plea agreement, and, within the 90-day period specified in the agreement, the restitution amount for the victim's car was determined to be $22,440.52. Following that determination, the trial court entered a supplemental judgment that required defendant to pay that amount to the victim's insurance company.

A few months after the expiration of the 90-day period, the state moved the court to award restitution for the city's damaged stairwell and guardrail. It argued that Article I, section 42, of the Oregon Constitution allowed it to seek restitution outside the 90-day period to which it had agreed as part of the plea bargain. The state explained that the district attorney's office had neglected to give the city notice that it needed to give the district attorney's office the information it needed to request restitution within the 90-day deadline; therefore, the city was not at fault. Defendant countered that such an untimely request for restitution conflicted with defendant's rights under the state and federal constitutions. Defendant observed further that the city was not without a remedy because it could bring a civil suit for the damages.

The trial court held a hearing on the state's motion, at which the state sought $51,555.94 in damages on behalf of the city, a figure that included the overhead costs of repairs. Without overhead, the cost of repairs was $29,967.44. The court agreed with defendant that restitution should have been requested sooner, but it nevertheless concluded that the city had a constitutional right to reimbursement under Article I, section 42. The court awarded the city only $29,967.44 because it did not believe that the state had proven the reasonableness of the overhead costs of repairs.

Defendant appeals, assigning error to the trial court's restitutionary award to the city for $29,967.44. He argues that the state cannot seek restitution for a victim under the victims' rights amendment to the Oregon Constitution if that action is inconsistent with the terms of its plea agreement with the defendant. Specifically, defendant argues that he has a due process right to notice of the

consequences of his plea bargain and enforcement of its terms. The state counters that the award for restitution was proper because defendant and the state had no authority to contract away the city's constitutional right to restitution, and any reading of the plea agreement precluding recovery for the city would be unenforceable as a matter of public policy.

Defendant is correct that he has a due-process-protected interest in the terms of his plea agreement, including the time limitation on when the amount of restitution for which he agreed to stipulate he was liable would be determined, and the state's arguments supply no basis for concluding otherwise. Defendant entered into a plea agreement that states unambiguously that, in exchange for defendant's pleas, the state agreed to recommend, as part of the sentence on Count 4, that the parties "stipulate to liability for restitution (amount TBD w/in 90 days)"—a recommendation that the trial court ultimately accepted. The Due Process Clause of the Fourteenth Amendment to the United States Constitution gives defendant an enforceable right in the benefit of that bargain. *Santobello v. New York*, 404 US 257, 262, 92 S Ct 495, 30 L Ed 2d 427 (1971); *State v. King*, 361 Or 646, 667, 398 P3d 336 (2017). That is, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled." *King*, 361 Or at 667. As the Supreme Court explained in *King*, that is because a criminal defendant relinquishes many other important constitutional rights when resolving a case by plea:

> "[A] criminal defendant's rights—not ordinarily present in a commercial contract setting—must inform the analysis and implementation of a plea agreement. When, as here, a criminal defendant enters pleas of guilty and no contest to charges in accordance with a plea agreement and is convicted, his or her pleas implicate state constitutional rights, *see* Article I, sections 11 and 12, of the Oregon Constitution, and rights under the Fifth and Sixth Amendments to the federal constitution. A criminal defendant entering such pleas waives the constitutional rights to a jury trial, to confront accusers, and to assert the privilege against

compulsory self-incrimination. And defendants waiving their constitutional rights must understand the rights being waived and must do so free from coercion."

*Id*. at 666-67 (internal citations omitted). That relinquishment of constitutional rights makes it fundamentally unfair to deprive a criminal defendant of the benefit of the bargain struck, giving rise to a due process right to enforce the plea bargain or seek another appropriate remedy. *See id*. at 667 ("[W]hen a defendant agrees to a plea bargain, the Government takes on certain obligations[,] and if they are not met, the defendant is entitled to seek a remedy[.]" (Quoting *Puckett v. United States*, 556 US 129, 137, 129 S Ct 1423, 173 L Ed 2d 266 (2009) (second bracket in original; internal quotation marks omitted).)).

Opposing this conclusion, the state first argues that the key phrase in defendant's plea agreement, providing that he will "stipulate to liability for restitution (amount TBD w/in 90 days)," is ambiguous. In particular, the state argues that the term is ambiguous because, in the state's view, the phrase refers to ORS 137.106(1)(a), which allows a trial court to extend the 90-day statutory deadline for restitution if there is "good cause" to do so. We see no ambiguity to the specification that the amount of restitution was "TBD w/in 90 days." Those words are plain. But even if the state were right that the phrase somehow incorporated the "good cause" exception contained in the statute, we do not see how that assists the state in this case because the trial court did not find "good cause" for awarding restitution beyond the 90-day statutory limit. Instead, the court stated specifically that, "[u]nder the statute, if this was purely a statutory issue, I would deny the request for a hearing."

The state also points out that a criminal defendant's due process right to enforce a plea agreement extends only to enforcement of material terms. But a time limitation on determining a criminal defendant's liability for restitution can hardly be said to be immaterial. On its face, the provision provides important finality regarding defendant's financial obligations stemming from this criminal conduct. It is not a term that is susceptible to characterization as an insubstantial or technical part of the bargain that

defendant has struck. Beyond that, the state's breach of the term also cannot be said to be minor or technical. *See, e.g.*, *United States v. Diaz-Jimenez*, 622 F3d 692, 694 (7th Cir 2010) (criminal defendant may not be entitled to a remedy for minor, technical breaches of a plea agreement). The state's restitution request was not untimely by a matter of minutes or mere days; it came nearly two months past the deadline. Additionally, to the extent that the materiality of the term might be debatable, we tend to think that the state, as the party seeking to avoid the agreement that it made, should bear the burden of proving that the term was not material to the parties' agreement—at least where, as here, the term is one that, on its face, appears to be material.

The state argues further that the time limitation on seeking restitution violates public policy and is unenforceable for that reason. We again disagree. For one, it largely tracks the policy expressed in the terms of ORS 137.106, which, as noted earlier, also imposes a similar time limitation on the state's ability to seek restitution. Additionally, consistent with the requirements of due process, Oregon courts long have recognized a policy of honoring and enforcing plea agreements. *See, e.g.*, *Stone v. OSP*, 39 Or App 473, 476, 592 P2d 1044 (1979) ("Failure to scrupulously observe a plea bargain is cause for post-conviction relief[.]"). Pertinent to this case, we have held that a criminal defendant is entitled to a remedy where, as here, the state seeks an award of restitution in a manner that conflicts with the terms of a plea agreement. *State v. Kendrick*, 285 Or App 328, 395 P3d 969 (2017); *State v. Thomas*, 281 Or App 685, 386 P3d 218 (2016).

Our decision in *Kendrick* is particularly germane. There, the defendant sought specific performance of a plea agreement that did not contemplate restitution. 285 Or App at 329. After the trial court gave the defendant the option to withdraw his plea and defendant declined, the court ordered restitution. *Id*. On appeal, the state conceded that the court erred because there was "no evidence in the record that restitution was part of defendant's plea agreement." *Id*. We accepted the state's concession, reasoning that, "[w]hen a plea agreement contains specific sentencing terms that do

not contemplate restitution, the state breaches that agreement by seeking restitution." *Id*. at 330 (citing *Thomas*, 281 Or App at 694). We concluded further that the state's breach entitled the defendant to specific performance of the agreement—that is, a hearing at which the state did not request restitution. *Id*. That we have held enforceable a plea agreement under which the state agreed to forgo requesting restitution completely makes it a struggle to conclude that an agreement that merely sets a time limitation for seeking restitution should be deemed unenforceable as violative of public policy.

Finally, the state also posits that Article I, section 42(1)(d), bars the enforcement of defendant's plea agreement, at least to the extent that it poses a time limitation on seeking restitution. That provision grants victims "[t]he right to receive prompt restitution from the convicted criminal who caused the victim's loss or injury." The state argues that, to the extent the plea agreement's terms would preclude the city from obtaining restitution, it is an illegal contract in view of Article I, section 42(1)(d). Alternatively, the state contends that, even if due process entitles defendant to a remedy for the state's breach of the plea agreement, "the proper remedy would be to allow defendant to withdraw his plea, not ordering specific performance of the plea terms, because, as discussed, specific performance would violate public policy—*i.e.*, the city's right to obtain prompt restitution under the Oregon Constitution."

As for the state's argument that the time limit on restitution contained in the agreement is "illegal" to the extent that it would restrict the city's ability to seek restitution outside that time limit, any right the city had under Article I, section 42(1)(d), was a qualified one, limited by defendant's rights under the federal constitution:

> "*Nothing in this section reduces a criminal defendant's rights under the Constitution of the United States.* Except as otherwise specifically provided, this section supersedes any conflicting section of this Constitution. Nothing in this section is intended to create any cause of action for compensation or damages nor may this section be used to invalidate an accusatory instrument, conviction or adjudication or otherwise terminate any criminal or juvenile delinquency

proceedings at any point after the case is commenced or on appeal."

Or Const, Art I, § 42(2) (emphasis added). Thus, a victim may not be granted restitution if that would result in a reduction of the criminal defendant's rights afforded by the federal constitution. *See State v. Barrett*, 350 Or 390, 404 n 9, 255 P3d 472 (2011) ("Article I, section 42, makes it clear that only federal constitutional rights are preserved inviolate[.]"). Here, as explained above, even if the term at issue might conflict with Article I, section 42(1)(d), in some circumstances, the resolution of the charges against defendant under the terms of the plea bargain gave defendant a protected right under the federal constitution to the benefit of his bargain. Under the plain terms of Article I, section 42(2) (and likely the Supremacy Clause as well), that federal constitutional right supersedes any conflicting right or interest under the terms of Article I, section 42(2), itself.

Beyond that, and perhaps more significantly, the fact that the *state* may have agreed with defendant to seek restitution within a 90-day period does not mean that the state has contracted away the rights of the city (or any other victim). For that reason, the state's agreement with defendant that the restitution to which defendant had stipulated would be determined within 90 days—a period that comports with the time period established by the legislature in ORS 137.106 for the district attorney to discharge the obligation of investigating and presenting evidence of economic damages—does not mean that the state has precluded victims, like the city, from seeking restitution outside of that time period if the district attorney's investigation comes up short, as it did here. And contrary to the dissenting opinion's suggestion, the right to restitution protected by Article I, section 42, does not encompass a *right* to have a prosecuting attorney assist in the recovery of restitution. Rather, the participation of the prosecuting attorney is discretionary: "Upon the victim's request, the prosecuting attorney, in the attorney's discretion, may assert and enforce a right established in this section." Article I, section 42(4). Thus, where the state's plea agreement with a defendant provides that restitution will be determined within the 90-day time period contemplated by statute, and

a victim seeks restitution outside of that window, a prosecutor, to avoid breaching the agreement, may need to decline to press the claim asserted by the victim. But that does not mean that a victim, acting on the victim's own accord, will be barred from obtaining restitution if the victim can establish the claim in accordance with the constitution and its implementing provisions.

As for remedy, ordinarily two options are available to a defendant when the state has breached a plea agreement: (1) specific performance of the agreement or (2) withdrawal of the plea and restoration of "the [s]tatus quo ante." *Stewart v. Cupp*, 12 Or App 167, 173, 506 P2d 503 (1973); *see also Thomas*, 281 Or App at 694-95. What remedy is appropriate depends on the particular circumstances of a given case. *Stewart*, 12 Or App at 173.

Here, defendant seeks specific performance— something that would preclude the state from seeking restitution on behalf of the city—while the state contends that plea withdrawal is the appropriate remedy. Under the circumstances, we agree that specific performance, rather than permitting plea withdrawal and returning the matter to the status quo ante, is appropriate. That is primarily for two reasons. First, the city is not the only victim of defendant's criminal conduct in this case. That means returning the case to its start will disrupt the finality afforded to the other victims by defendant's plea agreement, requiring, for example, that one victim refund any amounts paid for the damage to the car. Second, again, holding the state to its agreement that it would seek restitution within 90 days does not mean that the city may not, on its own accord and without the assistance of the state, seek its own remedies for the damage defendant caused it, including any remedies afforded to it under Article I, section 42, and the implementing statutes.

For the above reasons, we conclude that the trial court erred in declining to enforce defendant's plea agreement and in entering the untimely award of restitution requested by the state in favor of the city. We therefore reverse and remand for the trial court to strike that part of the restitution award and for resentencing.

Reversed and remanded for resentencing; otherwise affirmed.

**JAMES, J.,** dissenting.

The Due Process Clause of the Fourteenth Amendment does not prohibit a trial court from granting restitution to a crime victim who asserts a valid claim for a violation of their rights under Article I, section 42, of the Oregon Constitution, regardless of the terms of the plea agreement between the state and the defendant. The victim's right to criminal restitution is *their right*, independent of the wishes of the defendant or the prosecutor. A plea agreement between a defendant and the state cannot extinguish the rights of a third party not privy to the agreement. I conclude that the trial court had authority to impose restitution beyond the time limit specified in the plea agreement as a remedy for a valid claim of a violation of a victim's Article I, section 42 rights, and the state did not breach the plea agreement by raising that claim to the court. Because I would hold that the trial court's judgment should be affirmed, I respectfully dissent.

Because the procedural background of this case is relevant to my analytical approach, I relay it in some detail. As part of plea negotiations, defendant and the state agreed that restitution was "TBD within 90 days." On July 19, 2016, the court accepted defendant's guilty plea and imposed sentence, stating, "The State has [leave] to reopen if they want to seek restitution." On October 4, 2016, pursuant to defendant's stipulation, the court entered a Supplemental Uniform Criminal Judgment Temporary Sentencing Order imposing $24,440.52 in restitution on Count 2 to "Victim: USAA as subrogee of [C.V.]."

According to later representations by the prosecutor in the state's motion to show cause filed on February 1, 2017, the veracity of which are not contested by any party, "[o]n Dec. 5, 2016, Carol Timper with the City of Portland contacted the Multnomah County District Attorney's Office to inquire about restitution in this case related to the city-owned guardrail and staircase damaged by the pickup the defendant was driving when it crashed." The

state discovered that "due to error, the Multnomah County District Attorney's Office never entered the City of Portland as a 'victim' in this case in the database it relies upon to issue criminal cases and track restitution requests[.]" For that reason, the state explained, "[T]he City of Portland, through Ms. Timper, never received notice regarding its rights and responsibilities to claim restitution," and consequently, "the City of Portland did not file a timely request for restitution."

Also in its February 1, 2017, motion, the state requested a hearing for defendant to show cause why he should not be "ordered to pay $51,555.94 in economic damages to victim the City of Portland based on a violation of the victim's constitutional and statutory rights." On February 23, 2017, the court granted the state's request for a hearing.

On April 26, 2017, the court held a restitution hearing at which Timper testified that she receives police reports whenever city property is damaged and works with the city bureau that owns the asset to compile the costs of repair. Timper became aware of the damage to the city's property within a week of the accident. Because there were criminal charges associated with the damage, she knew the city would need to file a restitution claim. But she was waiting for the district attorney to send the city a restitution request, which did not occur. She testified that the costs associated with the damage caused by defendant were $51,555.94. The hearing was continued until May 3, 2017, at which time Douglas Hight, another city employee, testified that he had received an email from Timper on May 2, 2016, requesting an estimate of the damage and stating "restitution is our best option."

After hearing argument from both sides, the court issued an amended supplemental judgment for an additional $29,967.44 in restitution to "City of Portland—Risk Management."

Turning now to the constitutional and statutory landscape that governs this case. In 1999, Oregon voters amended the Oregon Constitution to create a series of constitutional rights possessed by a victim of a crime during a

criminal prosecution. Article I, section 42, provides, as relevant here:

> "(1)   To preserve and protect the right of crime victims to justice, to ensure crime victims a meaningful role in the criminal and juvenile justice systems, to accord crime victims due dignity and respect and to ensure that criminal and juvenile court delinquency proceedings are conducted to seek the truth as to the defendant's innocence or guilt, and also to ensure that a fair balance is struck between the rights of crime victims and the rights of criminal defendants in the course and conduct of criminal and juvenile court delinquency proceedings, the following rights are hereby granted to victims in all prosecutions for crimes and in juvenile court delinquency proceedings:

> "(a)   The right to be present at and, upon specific request, to be informed in advance of any critical stage of the proceedings held in open court when the defendant will be present, and to be heard at the pretrial release hearing and the sentencing or juvenile court delinquency disposition;

> "*****

> "(d)   The right to receive prompt restitution from the convicted criminal who caused the victim's loss or injury."

At the outset, it is important to note that restitution is a component of sentencing. As the Oregon Supreme Court has noted, "restitution is a sentencing device." *State v. Dillon*, 292 Or 172, 178, 637 P2d 602 (1981). That a victim may have a civil cause of action is no substitute for criminal restitution because the two serve different ends.

> "Because of the nature of restitution, the statutory scheme presents a peculiar blend of both civil and criminal law concepts, but it is not a form of civil liability and recovery. The theory of restitution is penological: It is intended to serve rehabilitative and deterrent purposes by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim. To make this relationship evident to the defendant, the permissible amount of restitution is measured by the injury to the victim."

*Dillon*, 292 Or at 178-79. Thus, a victim's right to restitution is not merely a right to be made economically whole, it

is a right to have that economic compensation imposed in the criminal proceeding itself in furtherance of "protection of society, personal responsibility, accountability for one's actions and reformation," which are the foundational principles of criminal law in Oregon pursuant to Article I, section 15, of the Oregon Constitution.

Article I, section 42, authorizes the legislature to enact laws to effectuate constitutional victim rights. Or Const, Art I, § 42(3)(c) ("The Legislative Assembly may provide by law for further effectuation of the provisions of this subsection ***."). The legislature did so, and of particular relevance to this case, provided the statutory framework in ORS 137.106 for the imposition of restitution as a component of a sentence.

First, ORS 137.106 creates a mandatory obligation by the prosecutor to investigate and present evidence in support of restitution whenever the crime has resulted in economic damage:

> "(1)(a)   When a person is convicted of a crime, or a violation as described in ORS 153.008 [(Violations described)], that has resulted in economic damages, the district attorney *shall* investigate and present to the court, at the time of sentencing or within 90 days after entry of the judgment, evidence of the nature and amount of the damages. The court may extend the time by which the presentation must be made for good cause."

(Emphasis added.)

Nothing in the statutory scheme prevents the victim from asserting their Article I, section 42 right to restitution through additional means, either on their own, or through counsel. Thus, the district attorney is not the only person who is authorized to assert an Article I, section 42 right to restitution on behalf of the victim. Rather, the district attorney is the only person who is mandated to do so, within a particular time.

Second, the legislature has required that a court impose restitution.

> "If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other

sanction it may impose, the court *shall* enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

ORS 137.106(1)(a) (emphasis added). There is no discretion for a court to *not* impose restitution when the court determines that the victim has suffered economic damages.

Further reinforcing that criminal restitution is a right guaranteed under the Oregon Constitution, a court may not impose restitution in any amount less than the full economic damages suffered without the express waiver of that constitutional right by the victim. ORS 137.106(1) provides, in part:

"*****

"(b)  Notwithstanding paragraph (a) of this subsection, a court may order that the defendant pay the victim restitution in a specific amount that is less than the full amount of the victim's economic damages only if:

"(A)  The victim or, if the victim is an estate, successor in interest, trust or other entity, an authorized representative of the victim consents to the lesser amount, if the conviction is not for a person felony; or

"(B)  The victim or, if the victim is an estate, successor in interest, trust or other entity, an authorized representative of the victim consents in writing to the lesser amount, if the conviction is for a person felony."

Finally, the legislature has created a framework for a crime victim to assert a claim for a violation of their Article I, section 42 rights. A victim who "wishes to allege a violation of a right granted to the victim in a criminal proceeding by Article I, section 42 or 43, of the Oregon Constitution" must timely inform the trial court of the alleged violation, describe the facts, and propose a remedy. ORS 147.515(1). The victim may assert a claim "personally, through an attorney or through an authorized prosecuting attorney." ORS 147.502(1). If a court determines that the claim is valid, the court is required to issue an order to show cause. ORS 147.515(3). If any party timely responds to the

order to show cause, then the court will hold a hearing. *See* ORS 147.517(2)(b) (order to show cause must include date on which court "will conduct a hearing on timely responses to the claim"); ORS 147.530(1) (establishing procedures for "[a] hearing on a claim, [or] a response filed under ORS 147.517(4)"); *cf.* ORS 147.520 (directing the court to resolve claims where no response has been timely filed).

Importantly, the timeliness of a claim for a violation of an Article I, section 42 right is not determined by reference to the criminal judgment. Rather, a claim is timely if it is asserted by the victim "within 30 days of the date the victim knew or reasonably should have known of the facts supporting the allegation." ORS 147.515(1). Accordingly, regardless of how much time has passed since entry of the criminal judgment, and regardless of whether sentence has been imposed, a victim may assert a claim for a violation of an Article I, section 42 right if they do so within 30 days of when they knew, or reasonably should have known, that their rights were violated.

In *State v. Barrett*, 350 Or 390, 255 P3d 472 (2011), the Oregon Supreme Court addressed the scope of permissible remedies a court may craft in the face of a verified claim for a violation of an Article I, section 42 right. In that case the defendant was charged with stalking his estranged wife. The victim had "invoked her right to be notified in advance of sentencing and other critical stage hearings, and completed a form memorializing those requests." *Barrett*, 350 Or at 395. However, prior to receipt of that form, the district attorney engaged in plea negotiations with the defendant. Those negotiations resulted in the defendant agreeing to plea, waive 48 hours to set over sentencing, and proceed immediately to be sentenced. The court imposed a relatively lenient sentence of two years of probation. The victim was not present at sentencing.

The victim brought a claim for a violation of her Article I, section 42 rights, specifically requesting, as a remedy, that the trial court set aside the defendant's sentence and resentence him with her present and participating. *Id.* at 396. The trial court agreed that the victim's Article I, section 42 rights had been violated, but held that no remedy

was permissible under the Oregon Constitution or Oregon statutes. *Id*.

On direct appeal to the Oregon Supreme Court, the defendant advanced three arguments in support of the trial court's reasoning, the second of which is germane to our analysis here: that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, as incorporated against the states via the Due Process Clause, barred setting aside a defendant's sentence as a remedy for an Article I, section 42 violation.

The court disagreed. First, it looked to the history of the Double Jeopardy Clause and noted that "[h]istorically, the common law allowed a trial court to increase the length of the sentence, as long as it did so during the same term of court, and the Double Jeopardy Clause was based on common-law restrictions." *Id*. at 406. Additionally, the court relied on *United States v. DiFrancesco*, 449 US 117, 101 S Ct 426, 66 L Ed 2d 328 (1980), for the proposition that a defendant "'is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired.'" *Barrett*, 350 Or at 406 (quoting *DiFrancesco*, 449 US at 135-36). In Oregon, the statutory mechanisms that afford crime victims the right to assert a claim for a violation of their rights based upon a timing mechanism untethered from the entry of the criminal judgment similarly shape a defendant's reasonable "expectation of finality in his sentence." *Id*.

Ultimately, *Barrett* concluded that "[t]he victim was entitled to a remedy by due course of law under Article I, section 42(3)(a). Her proposed remedy—vacating defendant's sentence and conducting a resentencing hearing—was permissible." 350 Or at 407. The court vacated the defendant's sentence and remanded for a new sentencing hearing, expressly affording the trial court the option of crafting a new sentence or imposing the same sentence. "[W]e do not suggest that the trial court must impose any different sentence than it did previously. That is a matter for the trial court to determine after an appropriate hearing." *Id*. And,

in fact, upon resentencing, and after hearing the victim's input, the court imposed a five-year probation period.

Like *Barrett*, this case is properly viewed as an assertion of a claim for a violation of the victim's Article I, section 42 rights. That was clearly how the parties, and the trial court, understood the matter.

"[PROSECUTOR]: We're here on the State's motion for an order to show cause why the victim, City of Portland, should not receive a restitution hearing in this case.

"[COURT]: It's an interesting title of a motion. I'm not sure that's the actual device, but it's close enough. * * *

"* * * * *

"[PROSECUTOR]: There's a statutory scheme for victims' rights violation and I was trying to track that.

"[COURT]: Yeah."

The parties' understanding that this was a claim under ORS 147.515 for violation of an Article I, section 42 right is further reinforced by defense counsel's arguments at trial. Defense counsel explicitly challenged the timeliness of the claim under ORS 147.515(1):

"[DEFENSE COUNSEL]: Your honor, I understand your ruling on the timeliness matter, but my point is that under existing case law, the only way they can cast aside the timeliness issue is if they establish a victim's constitutional rights have been violated. And what I am submitting to the court—

"[COURT]: Right.

"[DEFENSE COUNSEL]: —is that the City's rights were not violated in this instance. They knew that restitution was at issue from the date of the incident. They're emailing, requesting estimates and invoices at least a week later. Two of the exhibits that were submitted today show that a Track-It order was being prepared in connection with each job on April 28th."

That challenge to the timeliness of the claim under ORS 147.515(1) appears potentially well-founded, but that challenge has *not* been raised on appeal. Before us, defendant does not raise a statutory challenge, but has shifted

his argument to solely advance a two-fold constitutional argument. First, defendant argues that imposition of restitution, beyond the 90-day window contemplated in the plea agreement, violates the Due Process Clause.

But that argument cannot survive *Barrett*'s disposition. The trial court here was faced with the same type of claim for an Article I, section 42 violation as that raised in *Barrett*. And, similarly, the court was authorized to afford the victim a remedy. Any remedy short of altering the conviction itself is permissible. *Barrett*, 350 Or at 400 ("Although a remedy may include invalidating 'a ruling of a court,' it does not include invalidating a 'conviction or adjudication.' *** We conclude that resentencing (at least in this case) would not require invalidating a 'conviction.'" (Internal citation omitted.)). Accordingly, I cannot conclude, as does the majority, that "the resolution of the charges against defendant under the terms of the plea bargain gave defendant a protected right under the federal constitution to the benefit of his bargain." 305 Or App at 130. The modification of the restitution amount imposed here is no more disruptive—arguably less so—than the remedy of *Barrett*, which was a complete setting aside of the sentence. If general principles of the Due Process Clause prohibit the trial court from modifying the restitution amount in this case, then those same principles should have foreclosed the relief granted in *Barrett*.

Further, there can be no "benefit of his bargain" if the benefit is, as defendant argues, to extinguish a victim's statutory right to bring a claim. In essence, defendant on appeal asks us to interpret his plea as altering the statutory timeframe in which a victim could bring a claim for a violation of a constitutional right—altering it from the statutorily prescribed 30 days from the date of knowledge, to 90 days from the date of entry of the criminal judgment.[1] That is not a benefit to which defendant has a legal right. It is no different than if the plea agreement had said that the victim could not bring a civil suit against defendant if it was not

---

[1] In contrast, defense counsel's arguments at trial appear to acknowledge that the plea cannot preclude an ORS 147.515 claim for a violation of an Article I, section 42 right when counsel told the court that "under existing case law the only way they can cast aside the timeliness issue is if they establish a victim's constitutional rights have been violated."

commenced within 90 days of the entry of the criminal judgment. Neither the defendant, nor the state, has any authority to contract away the nonparty victim's statutory right to assert a claim for a violation of a constitutional right. "It goes without saying that a contract cannot bind a nonparty [to the contract]." *EEOC v. Waffle House, Inc.*, 534 US 279, 294, 122 S Ct 754, 151 L Ed 2d 755 (2002). That does not change, even when the contractual term is later codified in a judgment with the approval of the court. *Couch v. Couch*, 170 Or App 98, 103, 11 P3d 255 (2000), *rev den*, 332 Or 56 (2001) ("A judgment is of no legal effect with respect to a person who is neither a party to it nor is otherwise bound by it under the rules of judgment preclusion. *** Generally speaking, a judgment will not bind a nonparty unless the nonparty was in privity with a party to the underlying action." (Internal citations omitted.)).

Turning to defendant's second argument, defendant argues that "at a minimum, the state was obligated to present its evidence of the nature and amount of the victim's economic damages within 90 days." Accordingly, reasons defendant, the state was "restrained from subsequently asking the court to impose an additional amount of restitution after the 90-day deadline had passed." In support of that argument, defendant relies heavily on our decision in *State v. Thomas*, 281 Or App 685, 386 P3d 218 (2016). According to defendant, in *Thomas* we held that the state can, through principles of contract involved in plea negotiations, obligate itself to not seek restitution. Defendant misreads *Thomas*.

*Thomas* acknowledges the difference between the statutory obligations by the state to "investigate" and "present" evidence pertinent to restitution, while separating that process as distinct from a recommendation to the court.

> "To be sure, '[w]hen a person is convicted of a crime *** that has resulted in economic damages, the district attorney shall investigate and present to the court *** evidence of the nature and amount of damages.' ORS 137.106 (1)(a). And, if the court thereafter finds that the victim suffered economic damages, the court shall enter a judgment requiring restitution. *Id*. Even so, when offering a plea agreement before conviction, some of the circumstances of the crime may be unclear in light of conflicting evidence.

Or, a district attorney may lack information from a crime victim about a loss, despite reasonable notice and investigation. Whatever the results of investigation or presentation of evidence, nothing requires that the state *recommend* restitution in every circumstance."

*Thomas*, 281 Or App at 691 (emphasis in original).

As we recognized in *Thomas*, the state cannot contract away its legislatively imposed obligation that it "shall" investigate and present evidence for restitution in a criminal case where the victim has suffered an economic loss. It may agree not to *recommend* restitution, but it cannot agree not to investigate and present the evidence to the court. Similarly, here, the state cannot contract away its statutory role in assisting crime victims in raising a claim for a violation of a constitutional right.

The right to contract is important, and generally a role of a court is to enforce contractual rights and obligations. *W. J. Seufert Land Co. v. Greenfield*, 262 Or 83, 90-91, 496 P2d 197 (1972). However, "contract rights are [not] absolute; * * * [e]qually fundamental with the private right is that of the public to regulate it in the common interest." *Christian et al. v. La Forge*, 194 Or 450, 469, 242 P2d 797 (1952).

"One way in which courts have placed limits on the freedom of contract is by refusing to enforce agreements that are illegal. *Uhlmann v. Kin Daw*, 97 Or 681, 688, 193 P 435 (1920) (an illegal agreement is void and unenforceable). According to *Uhlmann*:

"An agreement is illegal if it is contrary to law, morality or public policy. Plain examples of illegality are found in *agreements made in violation of some statute*; and, stating the rule broadly, an agreement is illegal if it violates a statute or cannot be performed without violating a statute."

*Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 552, 340 P3d 27 (2014) (emphasis added).

Defendant's interpretation of the effect of the "TBD within 90 days" provision of the plea agreement would upend the statutory scheme in place for bringing claims for violations of Article I, section 42 rights. Thus, even if defendant

and the state had the authority to alter the nonparty victim's statutory rights (which they do not), such an agreement would be in violation of the statute and, accordingly, illegal and unenforceable. In my view, given that context, the term "TBD within 90 days" cannot plausibly be understood in the way that defendant contends.

For the reasons discussed, I conclude that the trial court did have authority to impose restitution here. Further, the state did not breach the plea agreement by bringing before the court the victim's statutory claim for a violation of an Article I, section 42 right. The trial court's supplemental judgment awarding restitution should be affirmed.

I respectfully dissent.