752 November 13, 2025 No. 972

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

DUSTIN JAMES VERRALL,
*Defendant-Respondent.*

Umatilla County Circuit Court
23CR21338; A183189

Jon S. Lieuallen, Judge.

Argued and submitted June 2, 2025.

Jordan R. Silk, Assistant Attorney General, argued the cause for appellant. Also on the opening brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General. On the reply brief were Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General.

Emily P. Seltzer, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

The state appeals a judgment dismissing a criminal indictment. Defendant and the state entered into a plea agreement in February 2023 to resolve three pending criminal cases. At that time, there were also several unrelated criminal matters under investigation, including defendant's involvement in a jail riot in December 2022. As part of the 2023 plea agreement, the state made a representation on the record regarding the status of unrelated matters. The trial court accepted defendant's pleas, and the three pending cases were resolved. Three months later, the state secured an indictment charging defendant with a single count of riot, ORS 166.015, based on the December 2022 incident, relying entirely on evidence that had been collected before the February 2023 plea hearing. Defendant moved to dismiss the indictment, arguing that the state was acting inconsistently with its prior representation. The trial court agreed and granted the motion. The state appeals. As explained below, we affirm.

By entering and performing a plea agreement, a criminal defendant "waives the constitutional rights to a jury trial, to confront accusers, and to assert the privilege against compulsory self-incrimination." *State v. King*, 361 Or 646, 666, 398 P3d 336 (2017). Once a plea agreement goes into effect, "[t]he Due Process Clause of the Fourteenth Amendment to the United States Constitution gives defendant an enforceable right in the benefit of [the] bargain." *State v. Lynch*, 305 Or App 122, 126, 469 P3d 800 (2020). Therefore, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled." *King*, 361 Or at 667.

In interpreting plea agreements, we generally follow the rules of contract interpretation, at least as a starting point. *State v. Heisser*, 350 Or 12, 23-24, 249 P3d 113 (2011). Under the contract rules, courts look to text, context, and the circumstances of contract formation to determine whether a disputed term is unambiguous or ambiguous; enforce it as written if it is unambiguous; and, if it is ambiguous, use factfinding or legal maxims to resolve the ambiguity. *Batzer*

*Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006). Plea agreements are a special creature though. "Criminal cases involve constitutional and statutory rights not ordinarily found in contracts between private parties, and those rights at times may override contractual principles." *Id.* at 23; *see, e.g.*, *King*, 361 Or at 657 (modifying the application of normal contract law principles out of "respect for the criminal defendant's bargain and waiver of trial-related constitutional rights").

The ramifications of that special status have not yet been explored much. For example, there is an open question as to the relevance, if any, of a defendant's subjective understanding of a plea agreement. *Heisser*, 350 Or at 24 n 8 (expressing no opinion on whether the requirement for voluntary and intelligent pleas "could impose a subjective element, outside of contract law, regarding a defendant's internal understanding of the meaning and consequences of the plea agreement"). There are also just very few cases addressing ambiguous plea agreements. On at least two occasions, we have considered an ambiguity in a sentencing term in a plea agreement and rather summarily relied on general contract principles to resolve it. *See State v. Carson*, 238 Or App 188, 193, 243 P3d 73 (2010); *State v. Ivie*, 213 Or App 198, 208, 159 P3d 1257 (2007). Recently, however, in *State v. Walsh*, 373 Or 714, 728-29, 570 P3d 617 (2025), the Supreme Court reiterated the unique nature of plea agreements and the need to sometimes deviate from straightforward contract analysis.

Given the underdeveloped state of the law in this area, we emphasize the narrow issue before us in this case. The trial court framed its ruling in terms of estoppel, which the state contends was the wrong way to think about it. At the same time, the state does not contest that it can be held to the prosecutor's representation if defendant relied on it in entering his pleas. On appeal, the parties have essentially framed the issue as one of contract interpretation, with the prosecutor's representation acting as an implied promise that became part of the plea agreement, and the key legal issue being whether that promise was ambiguous in its scope. The state, citing a federal case, acknowledges that

an ambiguous term in a plea agreement generally should be construed against the state. *See Lockett v. Ericsson*, 656 F3d 892, 897 (9th Cir 2011) ("[W]e steadfastly apply the rule that any lack of clarity in a plea agreement should be construed against the government as drafter." (Internal quotation marks omitted.)); *see also State v. McDonnell*, 310 Or 98, 114, 794 P2d 780 (1990) (Fadeley, J., concurring in part and dissenting in part) (suggesting that the state should "'shoulder a greater degree of responsibility for lack of clarity in a plea agreement'" (quoting *United States v. Giorgi*, 840 F2d 1022, 1026 (1st Cir 1988))).

We therefore turn to whether the prosecutor's representation was legally ambiguous. *Heisser*, 350 Or at 25-26. A term is ambiguous "if, when examined in the context of the contract as a whole and the circumstances of contract formation, it is susceptible to more than one plausible interpretation." *Adair Homes, Inc. v. Dunn Carney*, 262 Or App 273, 277, 325 P3d 49, *rev den*, 355 Or 879 (2014). In this case, the parties agree that, to determine whether the prosecutor's representation (and resulting implied promise) was ambiguous, we may consider the state's plea proposal dated February 1, 2023, defendant's plea petition dated February 1, 2023, and the parties' statements at the plea hearing on February 1, 2023.

Having considered those documents and statements, we conclude that the prosecutor's representation was ambiguous. The state's plea proposal provided for the "State to present on the record that there is insufficient evidence to charge defendant with additional crimes at this point," while also stating that "this negotiation resolves only the present 3 cases" and that "[d]efendant was notified that there may be other pending charges that may be filed in the future, and there are no other cases other than [these three case numbers] that are resolved by this agreement." Defendant's plea petition similarly provides that the "State will place on record no chargeable cases at this time but only resolves these cases." Significantly, both writings describe the promised representation in terms of insufficient evidence and nonchargeability, not by reference to the stage of investigation or the referral process between the police and

the district attorney's office. Given that fact, the accompanying statements about no other cases being resolved by the plea agreement do not lend much support to the state's position here, as defendant would not need to seek resolution of a matter for which the evidence that the state had collected (including by interviewing defendant) was insufficient to charge him.

The real question is whether the parties' statements at the plea hearing resolved the ambiguity. We are unpersuaded that they did. With the benefit of hindsight, it appears that what the prosecutor may have subjectively intended to represent was only that no pending matters had yet been formally referred to his office, such that there was nothing on his desk, figuratively speaking, that he was waiting to charge. But we agree with the trial court that, objectively, what the prosecutor said on the record was sufficiently confusing that it could reasonably be understood as broader in scope. As explained by defense counsel at the plea hearing, the entire impetus for the prosecutor making the representation at issue was that defendant had been interviewed and investigated in several unrelated matters. Defense counsel reached out to the prosecutor to find out the status of those matters as relevant to plea negotiations in the charged cases, resulting in the written plea proposal and plea petition, both of which speak in terms of the existing evidence being insufficient to charge defendant.

In that context, what was said at the plea hearing failed to clarify exactly what the prosecutor was representing. The prosecutor initially stated that "there's no pending charges, there's no pending cases for grand jury, there's not sufficient evidence to charge defendant with additional crimes"; later added that "I have not received reports saying, here's the case, here's what we want you to charge him with" and "there's no grand jury proceeding set for tomorrow"; and still later agreed when defense counsel described his understanding of the prosecutor's representation in a way that was itself not entirely clear but was again framed in terms of "the state" having "insufficient evidence" to charge defendant in the other matters under investigation at that time.

We do not question the prosecutor's subjective intentions, nor do we doubt that both parties sincerely tried to make a clear record at the plea hearing as to what the state was and was not representing regarding uncharged matters. We also cannot exclude the possibility that defendant subjectively understood the state's representation in the narrow way that the prosecutor may have subjectively intended it. The question before us is objective ambiguity, however, and we conclude that the prosecutor's representation was objectively ambiguous as to a specific category of uncharged matters—those for which the police had gathered all the evidence needed to charge defendant but which had not yet been formally referred to the district attorney's office for charging. And this case falls in that category because it is undisputed that, as of February 1, 2023, the police were in possession of all the evidence later used to charge defendant with riot.

Accordingly, we conclude that the trial court did not err in dismissing the indictment. The state's representation as part of its plea agreement with defendant was susceptible to more than one plausible interpretation, and, under one plausible interpretation, charging defendant with riot based entirely on evidence already in the state's possession on February 1, 2023, was inconsistent with its representation.

Affirmed.